IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Red River Valley and Western Railroad Company, | ) ) ) | **MEMORANDUM OPINION AND ORDER ON MOTION TO COMPEL ARBITRATION AND STAY LITIGATION** |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Burlington Northern and Santa Fe Railway Company, | ) ) | Civil No. 3:07-cv-19 |
| Defendant. | ) ) | |

Before the Court is a Motion to Compel Arbitration and Stay Litigation filed by Defendant

Burlington Northern and Santa Fe Railway Company ("BNSF") (Doc. #5).  Plaintiff Red River

Valley and Western Railroad Company ("RRVW") has filed a brief in opposition (Doc. #9).  The

Court has carefully considered the briefs and documents filed by the parties and now issues this

memorandum opinion and order.

## SUMMARY OF DECISION

The Court concludes that the arbitration provision in the Purchase and Sale Agreement does

not apply to the Car Hire and Accounting Agreement, so BNSF cannot compel arbitration on that

basis.  However, the Court finds that RRVW and BNSF entered into an independent agreement to

arbitrate the car hire dispute through their written communications.  Furthermore, the Court

concludes the doctrines of waiver and equitable estoppel do not apply to prevent BNSF from

asserting the right to arbitration.  Therefore, BNSF's Motion to Compel Arbitration and Stay

Litigation is GRANTED.

## FACTUAL BACKGROUND

In July 1987, RRVW acquired certain rail assets, including rail lines in North Dakota and Minnesota, from BNSF.  RRVW's purchase of the rail assets was accomplished through a series of agreements with BNSF executed on July 13, 1987.  The parties entered into a Purchase and Sale Agreement ("Purchase Agreement"), along with approximately nine other agreements which were attached to the Purchase Agreement as Appendices.  Those agreements attached as Appendices included a Locomotive Transportation Agreement, two Trackage Rights Agreements, an Interchange Agreement, a Rate and Allowance Agreement, a Car Hire and Accounting Agreement, a Car Repair Agreement, an Administrative Agreement, and an Easement Agreement, all dated July 13, 1987.

The construction of the Purchase Agreement and the Appendices is one of the central issues before the Court on the Motion to Compel Arbitration.  In particular, the parties dispute whether the arbitration provision in the Purchase Agreement applies to the Car Hire and Accounting Agreement ("Car Hire Agreement"), located in Appendix I.  Therefore, it is necessary to discuss the relevant terms of the agreements in some detail.

The Purchase Agreement provides for arbitration of certain disputes between the parties. Specifically, Section 19 of the Purchase Agreement states, in relevant part:

> If at any time a question or controversy shall arise between the parties hereto dealing with the construction of any part of this Agreement or concerning the observance or performance of any of the conditions herein contained, or the rights or obligations of either party under this Agreement, and notice of termination has not yet been given, either party may submit such question or controversy to arbitration by a disinterested person or persons familiar with such business and experienced in railway management, as hereinafter provided.

Resp. to Mot. to Compel, Ex. 1 at 46-47.

The Purchase Agreement defines the term "Agreement," as used therein, to refer only to "[t]his Purchase and Sale Agreement." Id. at 3.  The term "Agreement" is used numerous times throughout the Purchase Agreement with no reference to the Appendices.  In certain places, the language of the Purchase Agreement refers to "this Agreement and its Appendices" or "this Agreement or any Appendix hereto." See id. at 15, 17, 32-33, 36, 38, 42, 46, 50, 52.  In the section of the Purchase Agreement regarding governing law, the language refers to "[t]his Agreement, and all of those agreements attached hereto as appendices." Id. at 50.  In the section governing interpretation, the Purchase Agreement provides that "[t]his Agreement, and the appendices hereto, represent the entire agreement between the parties" Id. at 51.  The Purchase Agreement specifically incorporates by reference only Appendix M, which sets forth Closing Procedures to be followed by the parties. Id. at 39.

The Purchase Agreement contains only two references to the Car Hire Agreement, which is the primary Appendix at issue here.  Section 6 of the Purchase Agreement, which sets forth the terms of the agreement regarding equipment, provides that "[t]he parties agree to enter into a Car Hire and Car Accounting Agreement substantially the same in form and substance as the agreement set forth in Appendix I." Id. at 22.  Section 6 of the Purchase Agreement contains one other reference to "accounting for and payment of car hire as provided in Appendix I." Id. at 23.

On the same date they executed the Purchase Agreement, RRVW and BNSF also executed the Car Hire Agreement, which is attached to the Purchase Agreement as Appendix I. See Resp. to Mot. to Compel, Ex. 2.  The Car Hire Agreement acknowledges the existence of the Purchase Agreement and refers to it as the "Purchase Agreement." Id. at 1.  The term "Agreement" is used throughout the Car Hire Agreement in reference to itself. Id. at 1-2, 5.  The Car Hire Agreement

contains terms governing payment, time calculation, indemnity, length of the agreement, assignment, and modification of the agreement.  Id. at 4-5.  In April 1991, the parties executed two amendments to the Car Hire Agreement in accordance with its own terms for modification.  Id. at 7-8.

Notably, the Car Hire Agreement does not include any provision for arbitration of disputes arising thereunder, nor does it incorporate the Purchase Agreement by reference.  At least two other Appendices are drafted similarly to the Car Hire Agreement in the sense that they do not contain a provision for arbitration or a provision incorporating the Purchase Agreement by reference.  See Resp. to Mot. to Compel, Ex. 9 (Interchange Agreement - Appendix G), and Ex. 10 (Car Repair Agreement - Appendix J).

In contrast, some of the other Appendices, which also acknowledge the existence of the Purchase Agreement and refer to themselves as the "Agreement," do contain such provisions.  Both Trackage Rights Agreements (Appendices F-1 and F-2) provide for the arbitration of disputes regarding "the proper construction of this contract, or the respective obligations of the parties hereunder," in the manner set forth for arbitration under the Purchase Agreement.  Resp. to Mot. to Compel, Ex. 6 at 15-16, Ex. 7 at 16-17.  The Rate and Allowance Agreement (Appendix H) provides that the Purchase Agreement and all its sections are incorporated by reference, which would include the arbitration provision of the Purchase Agreement.  Resp. to Mot. to Compel, Ex. 8 at 13.

In 2004, seventeen years after RRVW and BNSF entered into this series of agreements, a dispute arose between them regarding the calculation of incentive payments under the terms of the Car Hire Agreement.  On November 19, 2004, Thomas Seifert, RRVW's legal counsel, sent a letter to Christopher Randall, director of Short Line Development for BNSF.  In his letter and accompanying memorandum, Seifert outlined the disagreement regarding the Car Hire Agreement

4

and requested to submit the matter to arbitration under Section 19 of the Purchase Agreement.  Resp.

to Mot. to Compel, Ex. 4 at 1-2.

On January 12, 2005, Timothy Thornton, BNSF's legal counsel, responded to Seifert's letter

on behalf of BNSF.  Resp. to Mot. to Compel, Ex. 5 at 1.  In his letter, Thornton stated:

> That November 18 memorandum accuses BNSF of violating the Car Hire and Car
> Accounting Agreement dated July 13, 1987.  The car hire agreement does not
> provide for arbitration of disputes arising under it.  Nevertheless, BNSF is willing
> to submit this dispute to binding arbitration conducted before a single arbitrator
> mutually agreed upon and pursuant to the rules of the American Arbitration
> Association without regard to AAA's customary fee schedule.  Please confirm
> RRVW's willingness to proceed on these terms by counter-signing the extra original
> of this letter and returning it to me.

Id.  The next piece of correspondence in the record is an e-mail dated June 5, 2006, from RRVW's

counsel Mark Sidman to Richard Allen, an arbitrator.  Decker Aff., Ex. C at 1.  In that e-mail,

Sidman explains that the parties "are involved in a contractual dispute regarding the calculation of

certain car hire incentive payments."  Id.  Sidman then states, "The parties have agreed to arbitrate

the dispute and there has been some discussion about the possibility of your serving as the

arbitrator."  Id.

The parties met with Richard Allen, the potential arbitrator, on June 20, 2006.  Resp. to Mot.

to Compel, Ex. 11 at 1.  Over the next six months, RRVW and BNSF attempted to work out the

details of the arbitration process.  On September 22, 2006, Bruce Alexander, counsel for RRVW,

sent an eight-page proposed Arbitration Agreement to Thornton, BNSF's counsel.  Resp. to Mot.

to Compel, Ex. 11.  On November 7, 2006, Thornton returned a draft of the proposed agreement to

Alexander with substantial revisions and deletions.  Resp. to Mot. to Compel, Ex. 12.

On December 4, 2006, Alexander responded with a lengthy letter regarding BNSF's

proposed changes and another draft of the Arbitration Agreement.  Resp. to Mot. to Compel, Ex. 13.

In the December letter, Alexander stated:

> We should begin the process shortly, now that we have an agreement about the fundamental dispute, i.e. a description about the different methods utilized by our clients to calculate Performance Payments, an agreement to proceed with arbitration before Richard Allen, and an agreement about the scope of discovery.

Id. at 1.  A few days later, Thornton responded with a terse letter stating it was unlikely BNSF would agree to Alexander's proposed changes, and that the selected arbitrator had been "tainted" by his involvement in the discussions regarding the Arbitration Agreement.

RRVW filed a Complaint against BNSF in this Court on February 16, 2007, alleging breach of the Car Hire Agreement.  In response to the Complaint, BNSF filed the instant Motion to Compel Arbitration and Stay Litigation.  Neither RRVW nor BNSF has filed anything in this Court other than briefs and documents related to the arbitration issue.

## DISCUSSION

BNSF contends that arbitration must be compelled in this case because the arbitration provision in the Purchase Agreement applies to the Car Hire Agreement.  BNSF also claims the parties entered into a separate agreement to arbitrate this controversy through their communications. RRVW resists arbitration, arguing that the Car Hire Agreement is not subject to the arbitration provision in the Purchase Agreement, and that BNSF is precluded from compelling arbitration in this matter through the doctrines of waiver and equitable estoppel.

### I. Construction of the Purchase Agreement and the Car Hire Agreement

The Federal Arbitration Act ("FAA") establishes a liberal federal policy favoring arbitration agreements.  Lenz v. Yellow Transp., Inc., 431 F.3d 348, 351 (8th Cir. 2005).  However, the strong presumption favoring arbitration is not without limits.  Nordin v. Nutri/System, Inc., 897 F.2d 339, 344 (8th Cir. 1990).  The United States Supreme Court has stated that "arbitration is a matter of

contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (citations omitted).  Courts must determine whether the parties are bound to arbitrate, as well as which issues they must arbitrate, "on the basis of the contract entered into by the parties."  Id. at 649 (citations omitted).

The Eighth Circuit has established a two-part test to apply when deciding whether to compel arbitration.  See Lipton-U. City, LLC v. Shurgard Storage Ctrs., Inc., 454 F.3d 934, 937 (8th Cir. 2006).  Courts must consider: (1) whether a valid agreement to arbitrate exists; and (2) if there is a valid agreement, whether the specific dispute falls within the scope of that agreement.  Id.  Courts should apply ordinary state law contract principles when deciding whether the parties have agreed to arbitrate a particular matter, giving healthy regard to the federal policy favoring arbitration.  Liberty Mut. Ins. Co. v. Mandaree Pub. Sch. Dist. No. 36, 503 F.3d 709, 711 (8th Cir. 2007).

In this case, both parties have cited to North Dakota law for general contract principles.  Under North Dakota law, in order to create an enforceable contract, there must be a mutual intent to create a legal obligation.  Mountrail Bethel Home v. Lovdahl, 2006 ND 180, ¶ 11, 720 N.W.2d 630, 633.  It is the words of the contract and the objective manifestations of assent which govern, not the secret intentions of the parties.  B.J. Kadrmas, Inc. v. Oxbow Energy, LLC, 2007 ND 12, ¶ 11, 727 N.W.2d 270, 273; Lovdahl, 2006 ND 180, ¶ 11, 720 N.W.2d at 633.

The object of interpreting and construing a contract is to ascertain and give effect to the mutual intention of the parties as it existed at the time of contracting.  City of Bismarck v. Mariner Constr., Inc., 2006 ND 108, ¶ 11, 714 N.W.2d 484, 490 (citing N.D.C.C. § 9-07-03).  When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone,

if possible.  N.D.C.C. § 9-07-04.  A contract must be construed as a whole to give effect to each provision if reasonably practicable, and each clause is to help interpret the others.  N.D.C.C. § 9-07-06; <u>Mariner Constr.</u>, 2006 ND 108, ¶ 11, 714 N.W.2d at 490.  Several contracts relating to the same subject between the same parties and made as part of one transaction are construed together.  N.D.C.C. § 9-07-07; <u>Capital Elec. Coop., Inc. v. City of Bismarck</u>, 2007 ND 128, ¶ 16, 736 N.W.2d 788, 795.

The Court has reviewed the Purchase Agreement, the Car Hire Agreement, and the other agreements attached as Appendices, construing them in light of the foregoing principles.  After careful consideration, the Court concludes the arbitration provision in the Purchase Agreement does not apply to the Car Hire Agreement.

Section 19 of the Purchase Agreement provides for arbitration "[i]f at any time a question or controversy shall arise between the parties hereto dealing with the construction of any part of this <u>Agreement</u> or concerning the observance or performance of any of the conditions herein contained, or the rights or obligations of either party under this <u>Agreement</u>. . . ."  Resp. to Mot. to Compel, Ex. 1 at 46-47 (emphasis added).  The Purchase Agreement clearly defines the term "Agreement" to refer to "[t]his Purchase and Sale Agreement."  <u>Id.</u> at 3.  At times, the language of the Purchase Agreement refers specifically to "this Agreement" along with the Appendices.  However, the arbitration provision of the Purchase Agreement refers only to "this Agreement" with no mention of the Appendices.  Only Appendix M is incorporated into the Purchase Agreement by reference.  Therefore, the Court finds that the parties intended the arbitration provision in Section 19 to apply only to the Purchase Agreement and Appendix M, not to the agreements attached as Appendices.

Furthermore, the language of all the agreements, taken as a whole, leads to the conclusion that the Purchase Agreement arbitration provision does not apply to the agreements in the Appendices, including the Car Hire Agreement.  After closely examining the contract language, the Court concludes the Purchase Agreement and the agreements in the Appendices are all separate and independent agreements, despite the fact that they were executed as part of the same transaction.  The Purchase Agreement clearly contemplates that the Appendices are separate attached agreements.  The relevant Appendices acknowledge the existence of the Purchase Agreement, but label themselves as the primary "Agreement" and contain separate contract terms.  Two of the Appendices specifically provide for arbitration of disputes, one of the Appendices incorporates the Purchase Agreement by reference, and three other Appendices, including the Car Hire Agreement, contain neither of these provisions.

RRVW and BNSF are sophisticated parties and undoubtedly had quality legal counsel in drafting this series of agreements.  Surely it was not an accident that the Purchase Agreement and certain Appendices provide for the arbitration of disputes, while other Appendices do not.  The Court concludes that at the time of contracting, the parties did not mutually intend to require arbitration of disputes arising under the Car Hire Agreement.  Therefore, BNSF cannot compel RRVW to arbitrate the present dispute under the terms of the 1987 agreements.[1]

---

[1] The Court would reach the same result if the Car Hire Agreement were considered a "side agreement" to the Purchase Agreement.  See United Steelworkers of Am. v. Duluth Clinic, Ltd., 413 F.3d 786, 788-791 (8th Cir. 2005).  The arbitration clause in the Purchase Agreement is clearly narrow, and the Car Hire Agreement is collateral to rather than a part of the Purchase Agreement.  Id. at 789-90.  Therefore, the dispute under the Car Hire Agreement would not be subject to arbitration.

## II. Agreement to Arbitrate through Written Communications

BNSF argues the parties entered into a separate agreement to arbitrate the dispute regarding the terms of the Car Hire Agreement. RRVW apparently concedes that the parties entered into an independent agreement to arbitrate, but argues that BNSF repudiated the agreement. <u>See</u> Resp. to Mot. to Compel, at 7.

After reviewing the written communications between the parties, the Court finds that the parties entered into a binding agreement to arbitrate the dispute arising under the Car Hire Agreement. The Eighth Circuit's reasoning in <u>Asia Pacific Industrial Corp. v. Rainforest Café, Inc.</u>, 380 F.3d 383 (8th Cir. 2004), is instructive. In that case, plaintiff Ashok Kothari requested arbitration of a dispute with defendant Rainforest Café. <u>Id.</u> at 386. Rainforest's counsel responded with a letter stating, "We believe that an arbitration in Minneapolis would be a workable process for resolving this dispute . . . . Please provide me with the name and number of your counsel so we can discuss the ground rules for arbitration." <u>Id.</u> The Eighth Circuit held that the parties had entered into a valid agreement to arbitrate their dispute, and "it only remained for the lawyers to sort through the details." <u>Id.</u> at 386-87.

Here, RRVW's counsel mailed a letter to BNSF requesting to submit the dispute over the interpretation of the Car Hire Agreement to arbitration under Section 19 of the Purchase Agreement. BNSF's counsel responded with a letter stating that the Car Hire Agreement does not provide for the arbitration of disputes, but that "BNSF is willing to submit this dispute to binding arbitration before a single arbitrator mutually agreed upon and pursuant to the rules of the American Arbitration Association." At this point, the parties had entered into a binding agreement to arbitrate this

particular dispute, although they had not yet worked out all the details.  A later e-mail from RRVW's counsel to a potential arbitrator confirms that "[t]he parties have agreed to arbitrate the dispute."

Although the parties never fully agreed on the procedural terms of the arbitration, as evidenced by the exchange of letters regarding the proposed Arbitration Agreement, this does not change the fact that they agreed to arbitrate the car hire dispute.  See Lonesome Dove Petroleum, Inc. v. Nelson, 2000 ND 104, ¶ 18, 611 N.W.2d 154, 159 ("Where the parties have agreed on the essential terms of a contract, the fact they contemplated a further writing memorializing the agreement does not prevent enforcement of the contract.")  If the parties could not agree on all the terms of the arbitration process, those claims could have been addressed to the arbitrator to decide. See Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., 334 F.3d 721, 726 (8th Cir. 2003).

### III.  Waiver

RRVW contends that BNSF waived the right to arbitrate under the Purchase Agreement. Interestingly, RRVW does not argue that BNSF waived the right to arbitrate under the independent agreement between the parties, which the Court has concluded is the proper basis for compelling arbitration.  At any rate, the Court concludes there has been no waiver in this case on either theory.

A party may be found to have waived its right to arbitration if it: (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts.  Lewallen v. Green Tree Servicing, LLC, 487 F.3d 1085, 1090 (8th Cir. 2007). A party acts inconsistently with the right to arbitrate if it substantially invokes the litigation machinery before asserting its arbitration right.  Kelly v. Golden, 352 F.3d 344, 349 (8th Cir. 2003). A party substantially invokes the litigation machinery when it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely

manner.  Lewallen, 487 F.3d at 1090.  Prejudice to the other party occurs when the parties use discovery not available in arbitration, when they litigate substantial issues on the merits, or when compelling arbitration would require duplication of efforts.  Kelly, 352 F.3d at 349.

On the facts of this case, the Court simply cannot find that BNSF has waived its right to arbitration.  RRVW argues that BNSF waived its right to assert arbitration under the Purchase Agreement, but the Purchase Agreement is not the source of the binding agreement to arbitrate. Furthermore, RRVW's argument is based solely on the January 2005 letter from BNSF's counsel stating that "[t]he car hire agreement does not provide for arbitration of disputes."  However, in the next sentence, BNSF's counsel states that "BNSF is willing to submit this dispute to binding arbitration."  It is difficult to imagine how BNSF could have invoked the litigation machinery or prejudiced RRVW when it agreed to arbitrate the dispute in the same letter, just on a different basis. Thus, the Court finds that although RRVW's argument based on the Purchase Agreement is misplaced, it must fail in any event.

As the Court sees it, any waiver by BNSF would have to be based on the independent agreement to arbitrate, not the Purchase Agreement.  Assuming that BNSF knew of the right to arbitrate under the independent agreement, there are simply no facts in this case to meet the other two prongs of the waiver standard.  BNSF has not invoked the litigation machinery; indeed, BNSF has not filed any lawsuits or engaged in any discovery regarding this matter.  BNSF moved to compel arbitration and stay litigation one month after RRVW filed the instant suit.  Additionally, there is no prejudice to RRVW, in the sense required for waiver of arbitration.  The parties have not litigated the merits of any claims or participated in any discovery, so compelling arbitration would

not require a duplication of efforts.  Based on the foregoing analysis, the Court concludes that BNSF has not waived its right to arbitrate.

## IV.  Equitable Estoppel

In the alternative, RRVW contends that BNSF should be barred from claiming a right to arbitrate under the Purchase Agreement through the doctrine of equitable estoppel.  Once again, RRVW does not address whether BNSF should be estopped from claiming a right to arbitrate under the independent agreement between the parties.

In North Dakota, the doctrine of equitable estoppel is codified at N.D.C.C. § 31-11-06. Section 31-11-06 provides, in relevant part:

> When a party, by that party's own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.

In order to prove a claim of equitable estoppel, the plaintiff must show: (1) the defendant falsely represented or concealed material facts, or calculated to convey the impression that the facts are otherwise than those which the defendant attempted to assert; (2) the defendant intended, or at least expected, that such conduct would be acted upon by, or would influence, the plaintiff; and (3) the defendant had knowledge of the real facts.  J.P. v. Stark County Soc. Servs. Bd., 2007 ND 140, ¶ 20, 737 N.W.2d 627, 635.  As to its own conduct, the plaintiff must show: (1) that it lacked knowledge and the means of knowledge of the truth as to the facts in question; (2) that it relied, in good faith, upon the conduct or statements of the defendant; and (3) it acted or failed to act on that basis of that reliance, so as to change its position or status to its injury, detriment, or prejudice.  Id.

RRVW's estoppel argument is based on the statement by BNSF's counsel in the January 2005 letter that the Car Hire Agreement does not provide for arbitration of disputes, and on the

failed negotiations between the parties to determine the details of the arbitration process.  RRVW claims that BNSF repudiated the independent agreement to arbitrate through its conduct.  However, although the parties clearly did not reach an agreement about the procedural details of the arbitration, the Court cannot find anywhere in the record where BNSF refused to arbitrate the instant dispute.

The Court concludes that RRVW has failed to establish the elements of equitable estoppel.  BNSF correctly asserted in its January 2005 letter that the Purchase Agreement arbitration provision does not apply to the Car Hire Agreement, and the Court has rejected BNSF's arguments to the contrary in support of the instant Motion to Compel.  As to the independent agreement to arbitrate, the only possible grounds for applying the doctrine of equitable estoppel is the disagreement between the parties over the procedural details of the arbitration.  The Court finds that these disputes over procedure are simply not enough to estop BNSF from enforcing the independent agreement between the parties to submit this dispute to arbitration.

## DECISION

BNSF's Motion to Compel Arbitration and Stay Litigation is **GRANTED**.  The Court hereby **ORDERS** that the action is stayed pending the completion of arbitration in this matter.

**IT IS SO ORDERED.**

Dated this 21st day of December, 2007.


    /s/   Ralph R. Erickson
Ralph R. Erickson, District Judge
United States District Court

14